THE ILLINOIS LAND AND LOAN COMPANY

*v.*

WILLIAM R. BONNER *et al.*

1. TENANTS IN COMMON—*unequal interests united in common—relations of the parties as to title.* If two persons claiming unequal interests in land enter into a written agreement to become tenants in common and owners in undivided halves, in equity they will become equal owners of the premises without regard to their prior several legal titles of record, whether good or bad, and as between themselves any failure of the title in respect to either of the original interests should be borne equally between them.

2. SAME—*partition between them—deeds of partition with covenants of warranty—subsequent incumbrancers—partition as to one claiming title to part.* If A, the owner of an undivided three-fourths of a lot, and B claiming the other one-fourth interest, make partition of the property, each warranting the title of the part set off to the other, after which, A mortgages his part in severalty to secure a loan to him of more than its value, and becomes insolvent, and the title which B originally had fails in consequence of the avoidance of the deed to him on the ground of infancy in his grantor, and the party succeeding to his interest seeks a partition, that interest in equity should be set off and assigned out of the land of B in the prior partition, so as to leave the part of A subject to the mortgage. The rule would be different between A and B if the burden was sought to be enforced against them alone.

3. PARTITION—*minor avoiding his deed—refunding money paid on incumbrance—preserving lien for its payment.* Where one of several tenants in common of land claiming under a minor's deed pays off a mortgage given by the minor's guardian for money for the minor's use, and such deed is avoided by an heir of the minor who seeks a partition, it is proper to require him to pay his proportion of the incumbrance as a condition to relief, as well as his proportion of taxes and assessments paid by his co-tenants. The amount should be decreed a lien on the land set off to such heir, and a reasonable time fixed for its payment, and sale ordered in case of default in payment.

4. COVENANTS OF WARRANTY *in deeds of partition—rights and remedy of subsequent purchasers.* When two parties, on making partition of land, convey each to the other, with a covenant of warranty as to the other's portion, so

long as they hold the lands each will be estopped, by reason of the covenant he has made to the other, to claim damages of the other for a failure of title. But such covenant not being a charge on the land of either, if either conveys or mortgages his part of the land his grantee may enforce the covenant against the other, and in such case equity may enforce an incumbrance affecting the title out of that part of the land belonging to the party liable on his covenant, and thus avoid circuity of action.

5. SAME — *running with land, not be affected by equities.* A covenant of warranty runs with the land, passes to the assignee with the land, and can not be affected by the equities existing between the original parties any more than the legal title to the land itself.

6. CONSIDERATION *in deed—upon whom conclusive.* As a general rule the consideration clause in a deed of lands is open to explanation, but in an action on a covenant of warranty brought by one to whom the grantee in the deed has conveyed, the grantor is not at liberty to show the consideration paid for the land to be less than the sum expressed in the deed.

7. Whatever may have been the actual consideration for deeds made in a partition of land, an innocent purchaser for value from either is entitled to rely upon the sum agreed in the deed as the amount of the consideration and as the measure of liability, upon breach of the covenant fixed by the parties themselves.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Mr. GEORGE SCOVILLE, for the appellant.

Messrs. PAGE & PLUM, for appellee Bonner.

Messrs. ISHAM & LINCOLN, for the Connecticut Mutual Life Insurance Company.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The original bill was filed in this case by William R. Bonner to recover and have partition of his alleged share of a certain tract of ground in the city of Chicago on the southwest corner of Monroe and La Salle streets, being 16¼ feet on Monroe by 189 on La Salle street; he claiming to be entitled to an undivided one-fourth of it as heir at law of Percy W. Bonner, deceased, his nephew, and as tenant in

common with the Illinois Land and Loan Company, the Cook County Land Company and L. B. Otis.

James D. Bonner, the former owner of the land, died leaving it to his children, Percy, Galila and Rosalia, an undivided one-third each.   Galila died leaving her one-third to her brother and sister, Percy and Rosalia, making then, in them, one-half in each.

Rosalia died, and her undivided one-half was purchased by C. A. Gregory, at her administrator's sale.

Percy died leaving his half to his uncle and aunt, William R. Bonner, the complainant, and Cassandra Anderson, an undivided one-fourth each.   Gregory purchased Cassandra Anderson's fourth, thus making an undivided three-fourths in him.

The Illinois Land and Loan Company's title was claimed to be an undivided one-half, by deed from Percy Bonner, in his lifetime, a minor.   This was the state of the title as it appeared from the public records.

Gregory and the Illinois Land and Loan Company agreed to partition, and as their land was a long narrow strip, only 16 or $16\frac{1}{4}$ feet deep fronting on a principal street, they induced L. B. Otis to unite with it a tract belonging to him lying in the rear $33\frac{9}{12}$ feet deep, and the three then made exchange and partition, as shown in the annexed plat:

LA SALLE ST.

—and executed between themselves on August 31, 1872, a tripartite deed, whereby the south $78\frac{5}{12}$ of this Bonner tract was conveyed to Otis by Gregory and the Illinois Land and Loan Company, and he conveyed to them portions of his lot in the rear of theirs, as appearing by the plat; and by the same deed partition was made between Gregory and the Illi-

nois Land and Loan Company of the remainder of this Bonner tract,—Gregory taking the north $45\frac{3}{12}$ feet on La Salle street, and the company that portion lying between Gregory and Otis, being $65\frac{4}{12}$ front on La Salle street.

In this deed, Gregory warranted the title of that part of the Bonner tract which went to the Illinois Land and Loan Company, and the Illinois Land and Loan Company warranted the title of the part which went to Gregory; and Otis warranted severally to Gregory and the Illinois Land and Loan Company the title of the several portions of his lot which he conveyed to them, the deed fixing $25,000 as the measure of liability upon each of the respective covenants, the same as if such amount were inserted in the deed as the consideration received in each case.

Afterwards, but before the bringing of this suit of Bonner, Gregory mortgaged the whole tract he got in the partition to the Connecticut Mutual Life Insurance Company, to secure the payment of a loan of $28,000. The mortgage contained also a full covenant of warranty by Gregory. Shortly afterward, Gregory conveyed his equity of redemption to the Cook County Land Company.

Such was the condition of things when the present bill was filed by William R. Bonner. The title has already been adjudicated as respects William R. Bonner, as above set forth, and he adjudged to be the owner of one-fourth, as determined by this court when the cause was once previously before us. See 75 Ill. 315.

The Connecticut Mutual Life Insurance Company, the mortgagee of Gregory, was made a party defendant, and that company filed its cross-bill asking that the interest of William R. Bonner be allowed to him wholly out of that part of the Bonner tract held in severalty by the Illinois Land and Loan Company, because of its covenant of warranty of title contained in its deed to Gregory and because the claim of the complainant is asserted against the title claimed by that company at the time of making the partition.

**118**      ILL. LAND & LOAN CO. *v.* BONNER *et al.* [Sept. T.

Opinion of the Court.

The court below so decreed, and the main question now is, as to the correctness of the decree in that respect. Bonner, the complainant, is content with the decree in this regard, the only party complaining being the Illinois Land and Loan Company. The record shows that the land mortgaged is not worth the mortgage debt, and worth not to exceed $25,000; that the mortgagor is insolvent; so that the Insurance company will have to take the land for its debt. When the Insurance company took its mortgage, it appeared by the records that Gregory, its mortgagor, had, at the time the partition was made, a record title to an undivided three-fourths of the land, (allowing the deed from Cassandra Anderson to have conveyed one-fourth,) and the Illinois Land and Loan Company a like title to the undivided remainder of the land by deed from Percy Bonner. The claim of title to the one undivided fourth by William R. Bonner in this suit, is asserted against the title which the Illinois Land and Loan Company put in the partition, and he has succeeded in the establishment of it; the deed from Percy Bonner to that company having been set aside under prior decisions in this cause. The title of Gregory remains entirely unaffected and complete. In partitioning this interest then, of one-fourth thus recovered, it is just that it should be set off from that portion of the lot held by the Illinois Land and Loan Company. That company should bear the whole burden of it, as it arises by the failure of its title. *Dawson* v. *Lawrence*, 13 Ohio, 544, is an authority to that effect. It is equitable as between these parties, the Connecticut Mutual Life Insurance Company and the Illinois Land and Loan Company, as thereby the latter bears the loss of its own title, and is made to perform its covenant for title running with the land by protecting the insurance company's land from the incumbrance. What has been said is with reference to what appeared from the records, and what purchasers would see and be entitled to regard as the condition of the title. Were the question one between Gregory and the Illinois Land and Loan Company, it would be different.

The proofs show that previously to the making of the tripartite deed, to-wit: on October 9, 1870, Gregory and the Illinois Land and Loan Company entered into a written agreement, whereby they agreed to become tenants in common of the whole Bonner tract, and owners of the same in undivided halves. Under this agreement, they became, in equity, equal owners of the premises, without regard to their prior several legal titles, and titles of record, whether good or bad, and as between themselves, under this agreement, the loss from this recovery of title by Bonner should be borne equally between them. But this agreement was never recorded, and the Connecticut Mutual Life Insurance Company had no notice of it. That company, therefore, is not to be in anyway affected by this agreement, and it is to be laid aside and not considered in the case as respects this company.

It could only know, and was only bound to look to the legal estate which existed and appeared of record, to-wit: three-fourths in Gregory and the rest in the Illinois Land and Loan Company. The covenant of warranty runs with the land, passes to the assignee with the land, and can not be affected by the equities existing between the original parties any more than the legal title to the land itself. *Suydam* v. *Jones,* 10 Wend. 180.

A similar result too would follow, from the interchange of covenants of warranty between the Land and Loan company and Gregory in their partition deed, each having given a personal covenant of title to the other, to run with such other's parcel of land. While the original parties to these cross-covenants still held their respective lands, each might be well estopped by reason of the covenant which had been made to the other, to claim damages of the other for failure of title. Gregory covenanted for the title of this parcel of land taken by the Land and Loan company. He was liable on that covenant personally, and that personal liability would make a set-off which, in equity, would disenable Gregory from recovering on the covenant of the Land and Loan company to him, if the cov-

enant remained in him. But this covenant of Gregory concerning other land did not create a charge upon his land so that it stood charged in the hands of his grantees to indemnify the Land and Loan company, if that company should become chargeable on its covenant running with the land it conveyed to Gregory. Gregory's covenant was personal to him, did not descend upon his grantees, respected another parcel of land, and it is not perceived how it can in any way be set up against the Insurance company in defeat of its remedy upon the Land and Loan company's covenant for title which it holds as grantee of Gregory; it not being affected, as before remarked, by equities existing between Gregory and the Land and Loan company.

The Insurance company having made no covenant, and so there being no counter-covenant to be interposed, as there would be if Gregory were now the party in interest, there seems to be no obstacle in the way of the full enforcement of the Insurance company's right of action upon the covenant for title which it holds, made by the Land and Loan company; and if not, then there is a propriety in allowing its enforcement in the present suit, as has been done by the decree rendered, allotting Bonner's interest to him wholly from that portion of the Bonner tract held in severalty by the Land and Loan company, thus protecting the Insurance company's title, and avoiding circuity of action.

The point is made that the measure of damages on breach of the covenant of warranty is the consideration paid,—that there was, here, no consideration paid, and hence there could be no substantial recovery upon the covenant. It is expressly agreed by the tripartite deed, that the measure of liability of the parties upon their respective covenants shall be $25,000 each, the same as if such amount were inserted in the deed as the consideration in each case. Whatever the actual consideration, innocent purchasers for value were entitled to rely upon this agreed sum as the amount of the consideration, and as the measure of liability upon breach of the covenant fixed

by agreement of the parties themselves.    May be, when this mortgage was taken, the Insurance company, from inspection of the records, had knowledge or doubts in respect to this adverse title which has here been established, but seeing this covenant by the Land and Loan company to answer for the goodness of the title to the extent of $25,000, and the defect appearing, from the record, to be in the latter's part of the title, that it parted with its money and took the mortgage in reliance upon this assurance of title by the Land and Loan company, as an indemnity to the amount of $25,000 against any defect of title.    We do not perceive why it would not have the right to so rely, and why there would not be an estoppel upon the Land and Loan company to claim to the contrary. As a general rule, the consideration clause in a deed of lands is open to explanation; but in an action on a covenant of warranty brought by one to whom the grantee in the deed has conveyed, the grantor is not at liberty to show the consideration paid for the land to be less than the sum expressed in the deed.    *Greenvault* v. *Davis,* 4 Hill, 643.

This covenant running with the land was, in effect, a promise by the Land and Loan company to the Insurance company that if the latter should take a mortgage of this land, it (the Land and Loan company) would protect the Insurance company from this Bonner title to the extent of $25,000; and this promise may now be made good, in affording that protection in this suit, by the Land and Loan company taking upon itself the loss of the failure of title, by having the assignment of complainant's recovered interest made from out the Land and Loan company's land exclusively.    This exempting of the Insurance company's land from the burden affords full protection to its title, as should be done, and avoids circuity of action in another suit upon the covenant for damages.

The liability upon this covenant for title enforced by the decree here against the Illinois Land and Loan Company in favor of the Connecticut Mutual Life Insurance Company, is but the legitimate result of the former's recorded covenant

running with the land to the Insurance company, on the faith of which, as a part of its muniment of title, the latter is to be supposed to have loaned its money and taken its mortgage; and as between these parties in interest, the Insurance company not knowing and not being bound to know anything respecting the title and interests of the parties, except what appeared from the public records, we regard the decree in this respect as just and equitable. As between the original parties to the deed, as already said, it might have been different.

When the case was here before, the Illinois Land and Loan Company made this same assignment of error,—that the complainant's interest was assigned to him exclusively out of that company's portion of the premises,—which was dismissed, with the mere remark that we saw no reason why the assignment should have been ordered to be made exclusively out of the Illinois Land and Loan Company's portion, and we found there was error in that. The matter of this affecting the interest of the Connecticut Mutual Life Insurance Company was not then brought to the attention of the court, and what was said was without reference to its bearing on the interest of that company. Subsequently, application was made to this court, on the part of that company, to set aside the former judgment of the court and to modify the former opinion in this respect, setting forth the reasons of the failure of the presentation of the case on the part of the company at the hearing. We reserved the decision upon this application to the time of the hearing. We regard the reasons so set forth as sufficient, and allow the company the benefit of the application as if granted at the time it was made.

It appears, from the proof, that while Percy Bonner, under whom the complainant claims, was a minor, his guardian mortgaged his interest in the premises, to secure the payment of money borrowed for the interest of the ward. This mortgage was discharged by the Illinois Land and Loan Company, and the court decreed that complainant should repay the company $6506.25, as the just proportion of the indebtedness that

complainant's part of the land should bear.   To this the complainant objects.

As this mortgage was an incumbrance upon the land, and was paid off and the land discharged therefrom by the Illinois Land and Loan Company, it was a proper condition of granting relief to the complainant that he should do equity by repaying his proportion of the money which was necessary to pay off the mortgage.   The decree, however, was not as specific as it should have been.   The amount should have been decreed a lien on the land set off to the complainant, and in case it should not be paid within a reasonable time, to be fixed by the court, the land ordered to be sold for the payment of the same, thus saving any necessity of another suit to enforce payment.

It appears, also, that some taxes and assessments have been paid, and we think complainant should be required to pay his proper proportion of such taxes and assessments as his cotenants have necessarily paid to discharge the land from the lien thereof, the same as in the case of the mortgage paid.

In these last two respects the decree is reversed, and the cause remanded for further proceedings in conformity with this opinion; in all other respects the decree is affirmed.

*Decree reversed in part, and in part affirmed.*

Mr. CHIEF JUSTICE CRAIG, dissenting:

I am unable to concur in the opinion of the majority of the court in this case.   The land and loan company was in possession of the portion allotted to it under the deed from Gregory making the partition, and, as has been repeatedly and uniformly held by this court, its actual possession was notice to the world of its claim of title, as fully as if all its title papers and agreements relating to the land had been duly recorded.

By the agreement executed by Gregory and the company when the partition was made, it was stipulated, that should it become necessary to purchase and take up an outstanding title,

each should contribute one-half of the sum necessary for the purpose. This Bonner claim was adverse to their title, and, under the agreement, each should contribute one-half towards its extinction, or half of the loss occasioned by its successful assertion. Had Gregory sued the land and loan company to recover for the loss of the fourth of his lot by the assertion of this Bonner claim, that agreement would have effectually precluded a recovery, because he had bound himself to bear one-half of the loss. That agreement was part of the arrangement by which the partition was effected and entered into, and formed a part of it as between Gregory and the land and loan company; and when the Connecticut Mutual Life Insurance Company took its mortgage on Gregory's share, it was charged with notice of the agreement, and all of its terms and conditions. As Gregory could not recover from the land and loan company for this failure of the title to his share, his mortgagee can be in no better condition. That company took from Gregory charged with notice, and hence subject to all the equities existing between Gregory and the land and loan company; and as equity would have restrained Gregory from recovering, it follows his mortgagee should, by the same rule of equity, be restrained from imposing any portion of the burthen on the share of the land and loan company.

Mr. Justice Walker: I concur in the above dissenting opinion, and further hold, that as Gregory and the land and loan company had each covenanted to the other to warrant the title they had severally conveyed, to effectuate the partition, equity would have restrained either, under the circumstances, from recovering against the other on the covenant; and if a recovery could have been had by one against the other at law, the damages could only have been nominal. When the Connecticut Mutual Life Insurance Company took the mortgage on Gregory's lot, these deeds and covenants were of record, and should, I think, be held to operate as notice that the covenants were mutually made for the purposes of a partition,

and in equity were not binding in such a case as the present. Having taken with such notice, that company should not be permitted, in equity, to impose the burthen of the failure of title on the lot of the land and loan company, any more than Gregory could have done had he sued. For these reasons I think the decree should be reversed.