### G. W. ALLISON ET AL. v. ELIZA PITKINS ET AL.

#### No. 937.

**1. Possession of Land by Tenant as Notice of Title.**

Plaintiffs' land was enclosed together with an adjoining survey, belonging to ·another person, and rented to a tenant who lived on such adjoining survey, but ·cultivated a small field lying across the line of the two tracts, and looked after both tracts, using the remaining lands for pasturage. Held, that such possession ·was notice of plaintiff's claim of title to the land.

**2. Warranty—Contradicting Recital of the Consideration in a Deed.**

As against his immediate grantee, a warrantor may show that the true con·sideration paid for the land was less than that recited in the deed, but he will not be permitted to show this as against a remote grantee, purchasing without notice ·of the true consideration.

APPEAL from Hunt. Tried below before Hon. E. W. TERHUNE.

*Williams & Butts,* for appellants.

*Sherrill & Hefner,* for appellees.

RAINEY, ASSOCIATE JUSTICE.—The land in controversy in this suit was patented to W. S. Todd, assignee, in 1857, and said Todd deeded the land to Horace W. and G. W. Pitkins in 1859, through whom the appellees claim. The patent recited that the land was situated in Fannin County, when, as a matter of fact, it was situated in Hunt County, Texas. In 1888, W. S. Todd and wife, Eliza, being dead, Geo. T. and Chas. S. Todd, as heirs of W. S. Todd and wife, by warranty deed sold the land

to W. C. Nail, which deed recited a cash consideration of $5000, but in fact said Geo. T. and Chas. S. Todd only received the sum of $500 in payment of their interest in the land. W. C. Nail, in 1888, deeded the land to Jno. A. Warren, warranting the title thereto, and reciting a consideration of $5500. In 1889, Jno. A. Warren, by warranty deed, conveyed the land to W. C. Gamble, reciting a consideration of $6000, but in fact, there being only $3000 of the consideration paid. In May, 1890, W. C. Gamble borrowed from the W. C. Belcher Land Mortgage Company the sum of $2700, and to secure the payment of same executed a deed of trust on the land in controversy, under which deed of trust the land was sold, and the trustee in the deed of trust, on August 6, 1891, deeded the same to the W. C. Belcher Land Mortgage Company, the consideration paid at the sale being $2000, which was credited on said indebtedness.

All of the foregoing instruments were duly recorded in Hunt County, Texas, and all of them, except the deed by virtue of the sale under said deed of trust, were recorded prior to July 28, 1891, the time when the muniments of title to appellees Pitkins were recorded in Hunt County, which was more than a year after the appellant mortgage company had acquired and fixed its lien upon the land. The land in controversy adjoins the Fiser survey on the south. In 1876 the owner of the Fiser survey improved fifteen or twenty acres near his south line, and, by mistake, enclosed seven acres of the survey in controversy. At the time this land was put in cultivation, one Cummins was acting as agent of the Fiser survey, and for several years all of the cultivated land was rented as the land of the Fiser survey. Subsequently, in about 1879 or 1880, Cummins was also appointed by Pitkins as agent to look after their survey. Cummins then had the lines of the Francis survey run and duly marked, and he then discovered that seven acres of the land in cultivation were situated on the survey in controversy, which is the Francis survey. For awhile after discovering it, he, being agent of both the Fiser and Francis surveys, rented the land in lump, without notifying the tenants that the land belonged to two different parties; he collected the rents and accounted to the different owners therefor. There was no fence segregating the two surveys until 1890, which was not until after appellant mortgage company had acquired its lien upon the land. The improved land on the Fiser and Francis surveys was enclosed in a common enclosure as one farm, the houses were on the Fiser survey, but the tenants were instructed to also look after the Francis survey and prevent depredation on the timber. In 1890, the improved land on the survey in controversy was not cultivated; the tenant who cultivated the farm on the Fiser survey of that year used that part of the land in controversy for a pasture. It was generally known in the neighborhood that the land in controversy belonged to the Pitkins.

The possession of the land in the manner indicated was sufficient notice to the mortgage company and those under whom it claims, that the Pitkins were adverse claimants of the land.

*Conclusions of law.*—Under the evidence, the possession of the land by the tenants renting through Cummins, who was the agent of the Pitkins, was sufficient to warrant the jury in finding that such possession was notice to the mortgage company, and those under whom said company claims, of Pitkins' ownership of the land at the date of their respective purchases. Brownson v. Scanlan, 59 Texas, 222; Bowles v. Brice, 66 Texas, 725; Wicks v. Lake, 25 Wis., 71; Webb on Record of Title, secs. 233, 234.

There is no error in the charge of the court, nor in refusing the special charges asked by appellants in reference to Pitkins' possession, as the main charge fully covered the law on that point. The judgment is affirmed as to Eliza and G. W. Pitkins, appellees.

On the other branch of the case, appellant mortgage company requested the court to instruct the jury, in effect, that the consideration expressed in the warranty deeds of its remote vendors was conclusive as to the amount received by them for the land, which was refused. It is well settled in this State that the measure of damages on a warranty, as between the immediate parties to the deed, is the amount of purchase money paid, with legal interest thereon. In such a case, the consideration expressed in the deed is not conclusive, but parol evidence is admissible to show what the true consideration is. We have been cited to no decision in this State, nor have we been able to find any, where the right to show by parol what the true consideration was, when different from that expressed in the deed, was allowed when a vendee was suing a remote vendor, and had no notice of the consideration other than that expressed in the deed. Looking to other authorities, we find that "as a general rule, the consideration clause in a deed to lands is open to explanation, but in an action on a covenant of warranty brought by one to whom the grantee in the deed has conveyed, the grantee is not at liberty to show the consideration paid for the land to be less than the sum expressed in the deed." 3 Sedg. on Dam., sec. 965; Land & Loan Co. v. Bonner, 91 Ill., 114; Shorthill v. Ferguson, 44 Iowa, 249; Greenvault v. Davis, 4 Hill (N. Y.), 643.

The deeds made by the Todds and Warren, respectively, expressed a consideration as paid for the land greater than that actually received by them, and greater than the consideration paid by the mortgage company when it purchased. The evidence fails to show that the mortgage company had notice of the considerations paid to the Todds or to Warren, therefore the court erred in refusing the instruction asked, for the mortgage company would be entitled to recover of said warrantors for the full amount paid by it for the land, unless, at the time it purchased, it had notice of the consideration actually paid said warrantors when they sold.

This rule, we think, just and equitable. Parties purchasing land have the right to rely on the covenants of warranty of remote as well as immediate vendors, and when recitals are made in the deed, the parties making them should be estopped from contradicting them as against

parties purchasing without notice of secret equities that may exist between the original parties.

The judgment is reversed as to Geo. T. and Chas. S. Todd and John A. Warren, and affirmed as to Eliza and G. W. Pitkins.

*Affirmed in part.*
*Reversed in part.*

Delivered November 23, 1895.

Writ of error refused.