(No. 16327.—Decree affirmed.)
MINERVA C. CRAWFORD *et al.* Appellees, *vs.* ALLEN B. HURST, Appellant.

*Opinion filed February 17, 1925—Rehearing denied April 11, 1925.*

1. PARTITION—*commissioners are vested with large discretion in making partition.* Whether there is an inequality sufficient to justify setting aside a partition by commissioners is a question for the court to decide, but the commissioners are vested with a large discretion, and their report, unless manifestly irregular or wanting in equitable distribution, will not be disturbed.

2. SAME—*dissatisfaction of a co-tenant is not evidence of inequality of partition.* The fact that a party directly interested in the land is not satisfied with the proposed division by commissioners is not conclusive evidence that there is unfairness or inequality in the partition.

3. SAME—*when a partition will not be set aside upon review.* Where the report of commissioners recommending a certain division of land involved in a partition suit is supported by a number of witnesses who are land owners in the vicinity and apparently unbiased, the order of court approving the commissioners' report will not be set aside on review where no inequality or unfairness is apparent on the whole record.

4. SAME—*party entitled to dower cannot defeat partition by refusing consent to sale.* In a suit to partition land in which there is a right of dower the court cannot order sale of the dower right without the written consent of the party entitled thereto, but where the land is capable of division the partition cannot be defeated by refusal of consent to such sale.

5. SAME—*court decreeing partition may require apportionment of taxes.* Whether the taxes are due and payable or whether they have been paid by one of the parties interested, a decree for partition and making a division of the land in accordance with the commissioners' report may require a party receiving a share of the land to pay his proportion of the taxes.

6. SAME—*a decree for partition may apportion lien of incum-
brance.* Parties to a partition suit have a right to have all ques-
tions correctly and finally determined, and where a division of the
land is decreed it is the duty of court, under section 15 of the
Partition act, to apportion an incumbrance which is a lien on the
entire land, and the decree may provide that each party shall ob-
tain a release of the land allotted to the other from his or her
share of the indebtedness and that the share of any party default-
ing shall be sold to discharge such indebtedness.

APPEAL from the Circuit Court of Brown county; the
Hon. FRED G. WOLFE, Judge, presiding.

S. A. HUBBARD, for appellant.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, for ap-
pellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the
court:

Minerva C. Crawford and Henry H. Crawford, her hus-
band, filed their bill for partition of an 80-acre tract of
land in Brown county and for an accounting of rents de-
rived therefrom, against Allen B. Hurst and others, in the
circuit court of that county. The title to and interests in
the land were fixed by this court in *Crawford* v. *Hurst,*
299 Ill. 503, and *Crawford* v. *Hurst,* 307 id. 243. The land
was incumbered by a mortgage for $6000. Hurst in his own
right held 10/104ths of the farm, and the heirs of Stella
Hurst, his deceased wife, the remaining 94/104ths. These
heirs were Allen B. Hurst, her surviving husband, and Mi-
nerva C. Crawford, her sister, each owning 47/104ths. The
share of Mrs. Crawford was, however, subject to the right
of dower of Hurst. A decree declaring the rights and in-
terests of the parties and appointing commissioners to make
partition was entered. Pursuant to that decree the commis-
sioners allotted to Hurst the north 44 acres in fee, and set
off to him for his right of dower the north 12 acres of the

south 36 acres, and, subject to that right of dower, they allotted to Mrs. Crawford in fee the south 36 acres of the farm. Hurst filed objections to the commissioners' report, which on a hearing were overruled. A decree was entered approving, and vesting title in accordance with, the report, and apportioning taxes, the mortgage indebtedness and costs. From that decree Hurst prosecutes this appeal.

The first contention of the appellant is that the division made by the commissioners is prejudicial to him. The farm in question is located upon a public highway one-half mile north of the corporate limits of Versailles, in Brown county. Considerable evidence was introduced concerning its character and value. More than twenty witnesses testified, and it is not strange that there was some conflict in their testimony. The commissioners went over the land, and they concluded that there was no difference in value between the north and south 40-acre tracts; that the farm could be divided without prejudice to either Hurst or Mrs. Crawford, and that it would make no material difference in price whether the land was sold as a whole or in separate parcels. It was the opinion of one of the commissioners that a higher price could be obtained for the land if it were sold in parcels as partitioned, rather than as a single tract subject to appellant's right of dower. The commissioners took into consideration a small area of rough land in the northwest corner of the farm, a ditch across the south 40 acres, a cemetery about 40 by 100 feet in the south tract, and another cemetery, somewhat smaller, in the north tract. Other witnesses believed that the north and south halves of the farm were substantially equal in value. A majority of the witnesses agreed that the rough land was not as good for general agricultural purposes as the rest, and in stating its area they varied from 3½ to 10 acres. Many of the witnesses thought that the rough land was fit for pasturage, while appellant testified that it was almost useless for any purpose. Concerning the surface of the land, one witness

testified that it consisted of a gray loam, and another that it varied from a dark, sandy loam to a lighter soil. Appellant testified that the soil improved toward the south of the farm, and that about one-half of the north 44 acres was as fertile as the south 36 acres. The improvements located on the north part of the farm consist of a frame house upwards of fifty-five years old and in poor condition, a barn in a fair state of repair, and a granary and corn-crib more recently built. Their value, according to the testimony, is from $500 to $900. On the question of the rental value of the land there was no unanimity of opinion. The figure ranged from $4 to $10 per acre annually, although a majority of the witnesses fixed it at $5 or $6. It appeared, however, that land in the vicinity usually was let for a share of the crop. With reference to the manner of sale, witnesses differed in opinion. Some believed the farm could be sold more advantageously as a whole, while others thought a sale in separate parcels would bring a higher price.

Whether there is an inequality sufficient to justify setting aside a partition by commissioners is a question for the court to decide. (*Riggs* v. *Dickinson, 2* Scam. 437; *Mulloy* v. *Mulloy,* 231 Ill. 285.) The fact that a party directly interested in the land is not satisfied with the proposed division is not conclusive evidence that there is unfairness or inequality in the partition. (*Mulloy* v. *Mulloy, supra.*) The commissioners are vested with a large discretion, and their report, unless manifestly irregular or wanting in equitable distribution, will not be disturbed. (*Riggs* v. *Dickinson, supra.*) The court usually prefers to rely on the judgment of the commissioners as practical men, who have been selected on account of their ability and experience and who have upon personal inspection made themselves acquainted with the property in question. (20 R. C. L. 768.) Moreover, their report is supported by the testimony

of a number of witnesses, apparently unbiased, who owned land in the vicinity. Upon the whole record no such inequality or unfairness in making the partition is shown as will justify this court in setting aside the circuit court's order approving the commissioners' report.

But appellant asserts that because he refused to permit his right of dower to be sold the commissioners divided the land instead of reporting that it was not susceptible of division. Without appellant's written assent thereto the court could not order the sale of his right of dower. (Partition act, sec. 32; *Richardson* v. *Trubey,* 250 Ill. 577.) The statute requires the commissioners to make partition of land that is susceptible of division without manifest prejudice to the parties in interest. (Partition act, sec. 18.) The land in question was capable of division, and appellant could not, by refusing to assent to the sale of his right of dower, defeat its partition.

It is next contended by appellant that the court was without power to direct him to pay a certain proportion of the taxes on the land; that appellee had the right to pay the taxes on the parcel allotted to her, and that under section 162 of the Revenue act (Smith's Stat. 1923, p. 1734,) she would be protected if the taxes were not paid on the rest of the land. Where the taxes have been paid by one party it is proper to require another who obtains a part of the land by partition to pay his proportion of such taxes. (*Illinois Land and Loan Co.* v. *Bonner,* 91 Ill. 114.) It does not appear whether the taxes on the land here involved were due and payable or whether they had been paid by one of the parties. If either was true of the taxes apportioned there was no error in the court's direction.

Appellant finally contends that the court, in apportioning the existing mortgage indebtedness between appellant and appellee, erred in directing each to obtain a release of that indebtedness to the extent that it incumbered the parcel of land allotted to the other. Of the mortgage for

$6000, then overdue, the court found that $3500 was the personal indebtedness of appellant; that the share of appellee should bear only the proportionate part of the remaining $2500, and that in the event of the failure of either party to obtain a release of the land allotted to the other from his or her share of the mortgage indebtedness, then so much of the land set off to the defaulting party as was necessary to discharge such indebtedness should be sold. The mortgage was a lien upon the entire farm. Partition of the land involved an adjustment of the rights and obligations of the parties with reference to that mortgage. There was no personal decree against either party for its payment. Failure to comply with the court's order would be followed by a sale of the mortgaged land in the manner directed. Under section 15 of the Partition act it is the duty of the court to ascertain and declare the rights, titles and interests of all the parties and to give judgment accordingly. To apportion incumbrances is within this duty. (*Kingsbury* v. *Buckner,* 70 Ill. 514; *Illinois Land and Loan Co.* v. *Bonner, supra.*) While this court has no power, on a bill for partition, to enforce the collection of a mortgage, it may declare a mortgage to be an incumbrance upon the share or interest of one of the tenants in common. (*Spencer* v. *Wiley,* 149 Ill. 56; *Illinois Land and Loan Co.* v. *Bonner, supra.*) The parties to a suit for partition have a right, as far as possible, to have all questions correctly and finally determined. (*Grote* v. *Grote,* 275 Ill. 206.) The court's order with reference to the mortgage was proper.

The decree of the circuit court of Brown county will be affirmed.

*Decree affirmed.*